## ALLYN et al. v. PENN MUT. LIFE INS. CO. OF PHILADELPHIA.

### No. 8955.

Circuit Court of Appeals, Ninth Circuit.

Dec. 30, 1938.

Irvine P. Aten and M. G. Gallaher, both of Fresno, Cal., for appellants.

W. M. Conley, Philip Conley, and Matthew Conley, all of Fresno, Cal., for appellee.

Before WILBUR and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

The appellee brought an action for a declaratory judgment to have its obligations determined under a life insurance policy, No. 1,714,176, issued October 28, 1932, for $3300 upon the life of Arthur Allyn. The premium was $28.48 each quarter payable on the 18th of January, April, July and October. Policy years were to be computed from October 18, 1932. It is undisputed that the premiums were paid to and including April 1934 although two of the payments were belated and were received after the due date accompanied by a health certificate as required by the terms of the policy. The quarterly premium due July 18, 1934 was not paid. A year and four months later, on November 27, 1935, the insured sent a personal check dated November 27, 1935, for $28.48 to the appellee's home office in Philadelphia. This check had on its margin the number 1,714,176, which is the number of the policy in dispute.

At that time the insured had another policy of insurance numbered 1,714,177 issued by the appellee, upon which a premium note for $165.90 had been executed by the insured. The Insurance Company applied the amount of the check, $28.48, upon the interest due upon this premium note ($9.12), and the balance ($19.36) was applied to the principal. The policyholder made no further payment of premium on this policy until on August 8, 1936, a short time before his death, which occurred August 24, 1936, he sent to the Company another check for $28.48 which was not applied to any indebtedness and was returned to the administratrix of his estate after his death.

On the two former occasions when the policy premiums were overdue, in order to

secure reinstatement the insured had been required to furnish proofs of good health upon printed blanks furnished by the Company and had been notified that in the event of a third lapse it would be necesssary to furnish a medical certificate of good health and insurability upon printed blanks furnished by the Company for that purpose. This he did not do.

The provisions of the policy (set out in the footnote),[1] relating to its lapsing for failure to pay premiums, indicate that the right and obligation of the policyholder to make such payments ceased when the policy lapsed. Thereafter the right of the policyholder depended upon his ability to make satisfactory showing as to health.

It will be observed that the payment of $28.48 was made a year and four months after it was due, without any interest thereon and without the payment of five other premiums then overdue and without proof of good health or medical certificate.

The defendants, while admitting the insufficiency of the payment by check for $28.48 to effectuate a reinstatement under the terms of the policy, rely upon the doctrine of waiver. But the argument in favor of a waiver is predicated upon the assumption that the insured had a right to demand that the money he sent the Company be applied upon the premium due July 18, 1934 and that such a demand is shown by the number of the policy and the amount of the premium stated in the check. The appellants thus rely upon the right of a debtor to designate the debt to which his payment is to be applied, where he owes two or more obligations to the creditor. Cal.Civ.Code § 1479. But in the case at bar the debtor owed no premium obligation on the lapsed policy and the creditor

applied the payment to the only obligation due it, as it had a right to do.

The defendants strongly rely upon the fact that the policy fixes no limit upon the period during which it may be reinstated but on the contrary provides that it may be reinstated at any time upon evidence of insurability and payment of premiums due with interest at 6%. It is therefore urged that the policy still had some vitality notwithstanding the provision therein that it is "null and void", for nonpayment of premiums.

The effect of the provision of the policy for reinstatement is that the Company agrees thereby to waive the forfeiture of the premiums theretofore paid, but this agreement is predicated upon both insurability and the payments of all overdue premiums with interest. The amount thus required to reinstate the policy at the time the check of the insured was received by the plaintiff at its home office was $175.62.

The defendants do not claim that the policy was completely reinstated by such payment but do claim that the belated payment of $28.48, when accepted by the Company, operated as a waiver of the delay in the payment thereof and had the same effect as though it had been made at the time it was due July 18, 1934. Consequently, it is claimed that under sec. 3 of the policy, supra, the insured, having thus paid the premiums for two full years, became entitled to the extended insurance of two years and one hundred forty-three days, during which period he died.

The policy provision with regard to the extended insurance, supra, applies to the situation arising where two full years of premiums have been paid before the default. It provides that otherwise "this policy shall

---

[1] The policy provisions under "Section 3. Lapse—Non-Forfeiture—Policy Values: * * *

"Upon non-payment of any premium when due or within the period of grace, this policy shall lapse and become null and void, but if premiums have heretofore been paid for two full years or more a value will be available which will be the full reserve on this policy less a surrender charge not greater than 1% of the face amount of this policy. * * * "

Sec. 5, under the heading of "Premium Payment: * * *

"Payment of Premiums. All premiums are due and payable in advance at the Home Office of the Company in the City of Philadelphia, or they may be paid to agents on or before the dates when due in exchange for receipts signed by the President, a Vice-President, Secretary, Treasurer, or Actuary and countersigned by the agent. * * *

"Reinstatement. In the event of default in premium payments, unless the cash value has been duly paid, this policy may be reinstated at any time upon evidence of insurability satisfactory to the company and the payment of all overdue premiums and the payment for reinstatement of any other indebtedness to the company upon said policy, with interest at the rate of 6 per cent. per annum."

lapse and become null and void". Consequently, on the failure to pay the premium due July 18, 1934, and before the tender of November 27, 1935 of $28.48, the policy by its terms became "null and void". By the terms of the policy a payment of premium thereafter could only be effective if and when the policy was reinstated according to its terms. On this evidence the trial court found that the premium due July 18, 1934 was not paid and that the appellee did not receive or accept such premium payment or waive the provisions of the policy relative to reinstatement. The evidence supports these findings.

In the cases cited by the appellants in support of their claim of waiver, such as Inter-Southern Life Ins. Co. v. Omer, 238 Ky. 790, 38 S.W.2d 931; Equitable Life Assurance Society v. Brewer, 225 Ky. 472, 9 S.W.2d 206, there was no doubt as to the intent of the policyholder that his payment be applied to a certain overdue premium upon the one and only policy of the insured and, under the circumstances, the retention of the payment without any communication to the policyholder of the fact that the payment was held conditionally until satisfactory evidence of good health was received was held to waive the condition and the previous default. In the case at bar there was no unequivocal tender of the premium due July 18, 1934 upon the policy in question. The most that can be said of it is that the number of the policy on the check and the amount of the premium could be construed as indicating a purpose by the policyholder to have the amount applied on a quarterly premium then due upon the policy in question; but investigation having established that the policy had lapsed and was according to its own terms null and void and that the payment was wholly inadequate to reinstate the policy, the tender must be considered as so equivocal that the mere application of the payment by the Company to the payment of another indebtedness of the insured without affirmative evidence that it was actually applied to the premium due July 18, 1934, would be insufficient to waive the delay in payment and the other requirements as to reinstatement. If the Company had actually applied the payment of $28.48 to the eighth premium due on the lapsed policy, it might be argued with some force that the payment would result in extended insurance notwithstanding the terms of the policy requiring the payment of two years' premium before the lapse. Even so, in the case at bar the Com-

pany refused to do so, and applied the payment to another indebtedness of the insured. It did not issue the customary premium receipt to the insured. The appellee claims that it notified the insured of its application of the $28.48 to the premium notes on the other policy and that the evidence so shows. This claim is based upon proof of its custom so to do.

For the reasons stated we find it unnecessary to pass upon the question as to whether the evidence of the appellee's custom is sufficient to support a finding that the insured had notice of the application of this payment.

As our decision disposes of the case it is unnecessary to consider other questions presented as they do not affect the result.

Decree affirmed.

HEALY, Circuit Judge, does not participate in this decision.